UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | **EDCV 19-1231 JGB (SHKx)** | Date | Jul. 31, 2023 |
| Title | *Karrene Phillips et al. v. County of Riverside, et al.* <br> *Related cases:* <br> *5:22-cv-01051-JGB-SHK; 5:22-cv-01053-JGB-SHK; 5:22-cv-01054-JGB-SHK; 5:22-cv-01055-JGB-SHK;* <br> *5:22-cv-01065-JGB-SHK; 5:22-cv-01069-JGB-SHK; 5:22-cv-01070-JGB-SHK; 5:22-cv-01076-JGB-SHK;* <br> *2:22-cv-04391-JGB-SHK; 5:22-cv-01067-JGB-SHK; 5:22-cv-01068-JGB-SHK; 5:22-cv-01073-JGB-SHK;* <br> *5:22-cv-01075-JGB-SHK; 5:22-cv-01074-JGB-SHK; 5:22-cv-01083-JGB-SHK; 5:22-cv-01084-JGB-SHK;* <br> *5:22-cv-01085-JGB-SHK; 5:22-cv-01086-JGB-SHK; 5:22-cv-01072-JGB-SHK; 5:22-cv-01087-JGB-SHK;* <br> *5:22-cv-01106-JGB-SHK; 5:22-cv-01107-JGB-SHK; 5:22-cv-01108-JGB-SHK; 5:22-cv-01109-JGB-SHK;* <br> *5:22-cv-01111-JGB-SHK; 5:22-cv-01113-JGB-SHK; 5:22-cv-01115-JGB-SHK; 5:22-cv-01117-JGB-SHK;* <br> *5:22-cv-01118-JGB-SHK; 5:22-cv-01121-JGB-SHK; 5:22-cv-01131-JGB-SHK; 5:22-cv-01119-JGB-SHK;* <br> *5:22-cv-01135-JGB-SHK; 5:22-cv-01134-JGB-SHK; 5:22-cv-01145-JGB-SHK; 5:22-cv-01148-JGB-SHK;* <br> *5:22-cv-01147-JGB-SHK; 5:22-cv-01146-JGB-SHK; 5:22-cv-01142-JGB-SHK; 5:22-cv-01138-JGB-SHK;* <br> *5:22-cv-01050-JGB-SHK; 5:22-cv-01136-JGB-SHK; 5:22-cv-01116-JGB-SHK; 5:22-cv-01120-JGB-SHK;* <br> *5:22-cv-01110-JGB-SHK; 5:22-cv-01163-JGB-SHK; 5:22-cv-01164-JGB-SHK; 5:22-cv-01188-JGB-SHK;* <br> *5:22-cv-01140-JGB-SHK; 5:22-cv-01149-JGB-SHK; 5:22-cv-01155-JGB-SHK; 5:22-cv-01158-JGB-SHK;* <br> *5:22-cv-01161-JGB-SHK; 5:22-cv-01165-JGB-SHK; 5:22-cv-01166-JGB-SHK; 5:22-cv-01167-JGB-SHK;* <br> *5:22-cv-01168-JGB-SHK; 5:22-cv-01173-JGB-SHK; 5:22-cv-01174-JGB-SHK; 5:22-cv-01186-JGB-SHK;* <br> *5:22-cv-01178-JGB-SHK; 5:22-cv-01204-JGB-SHK; 5:22-cv-01203-JGB-SHK; 5:22-cv-01159-JGB-SHK;* <br> *5:22-cv-01160-JGB-SHK; 5:22-cv-01169-JGB-SHK; 5:22-cv-01172-JGB-SHK; 5:22-cv-01175-JGB-SHK;* <br> *5:22-cv-01176-JGB-SHK; 5:22-cv-01181-JGB-SHK; 5:22-cv-01183-JGB-SHK; 5:22-cv-01193-JGB-SHK;* <br> *5:22-cv-01179-JGB-SHK; 5:22-cv-01187-JGB-SHK; 5:22-cv-01189-JGB-SHK; 5:22-cv-01190-JGB-SHK;* <br> *5:22-cv-01191-JGB-SHK; 5:22-cv-01197-JGB-SHK; 5:22-cv-01201-JGB-SHK; 5:22-cv-01208-JGB-SHK;* <br> *5:22-cv-01182-JGB-SHK; 5:22-cv-01196-JGB-SHK; 5:22-cv-01199-JGB-SHK; 5:22-cv-01206-JGB-SHK;* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

| **Proceedings:** | Order (1) GRANTING Joint Motion for Approval of FLSA Settlement and Dismissal of Case With Prejudice (Dkt. No. 218); (2) VACATING the August 7, 2023 Hearing; and (3) DENYING AS MOOT Motions in Limine (Dkt. Nos. 136, 137, 138, 139, 141, 142, 144, 145, 146, 147) (IN CHAMBERS) |
|---|---|

Before the Court is a joint motion for approval of the parties' settlement agreement under the Fair Labor Standards Act ("FLSA") and dismissal of the case with prejudice. ("Motion," Dkt. No. 218.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the matter, the Court GRANTS the Motion. The Court VACATES the August 7, 2023 hearing.

## I. BACKGROUND

The plaintiffs in this action are or were former or current social workers employed by the Children's Services Division ("CSD") of the County of Riverside's Department of Public Social Services ("DPSS"). On July 2, 2019, Plaintiffs Karrene Phillips, Clarence Woods and Elbert "Wayne" Shepperd ("Named Plaintiffs") filed their complaint on behalf of themselves and other similarly situated employees against Defendant County of Riverside ("Defendant" or "the County"). ("Complaint," Dkt. No. 1.) Plaintiffs generally alleged that Defendant frequently suffered or permitted them to work more than 40 hours per week without paying them all of the overtime compensation required by the FLSA. (See id.) They alleged that Defendant was aware that social workers worked uncompensated overtime and failed to accurately record, report, and preserve records of hours they worked, and that the County willfully violated the FLSA. Plaintiffs sought unpaid overtime, liquidated damages, interest, and attorney's fees and costs. (See id.)

On September 23, 2019, Named Plaintiffs filed a first amended complaint. ("FAC," Dkt. No. 22.) Named Plaintiffs brought a single cause of action, for violation of the FLSA, on behalf of themselves and "all other CSD Social Workers who were employed by Defendant within the applicable limitations period and who worked in excess of the maximum hours prescribed by 29 U.S.C. § 207(a) without payment of all of the overtime compensation required thereunder" ("Class Members"). (Id. ¶ 15.)

On September 27, 2019, the County filed an answer to the FAC denying all allegations and raising multiple affirmative defenses. (See "Answer," Dkt. No. 23.) The County asserted that it acted in good faith, did not willfully violate the FLSA, and is entitled to offset non-FLSA premium overtime payments that it made against any FLSA overtime payments owed. (See id.)

On December 2, 2019, the parties filed a joint report, which included a stipulation for the conditional certification of the following collective action: "all individuals who work or worked as social workers for the Children's Services Division of the County of Riverside's Department Of Public Social Services between July 2, 2016 and the present." ("Joint Report," Dkt. No. 29 at 8.)

On February 3, 2020, Plaintiffs filed a motion for approval of notice of collective action. ("Motion for Approval of Notice," Dkt. No. 38.) On March 2, 2020, the Court granted-in-part and denied-in-part the Motion for Approval of Notice. ("Notice Order," Dkt. No. 43.)

Thereafter, 191 former or current social workers opted in to this lawsuit. (Motion at 9; see also Dkt. Nos. 44-53, 56-58, 62-64, 66, 68, 70-79, 81-82, 87-99, 103.)

On February 18, 2022, the County filed a motion to decertify the collective action. ("Motion to Decertify," Dkt. No. 129.) The same day, the County filed a motion to dismiss certain plaintiffs from the action. ("Motion to Dismiss," Dkt. No. 130.)

On February 28, 2022, the parties filed motions in limine. (See Dkt. Nos. 136, 137, 138, 139, 141, 142, 144, 145, 146, 147.)[1]

On February 28, 2022, Plaintiffs filed a motion to toll the statute of limitations. ("Motion to Toll," Dkt. No. 135.)

On April 7, 2022, the Court granted the Motion to Decertify, denied as moot the Motion to Dismiss, and denied the Motion to Toll. ("April 7, 2022 Order," Dkt. No. 188.) The Court dismissed without prejudice the opt-in plaintiffs whose claims were not time-barred. (Id.)

Between June 27, 2022 and July 11, 2022, 86 of the dismissed opt-in plaintiffs ("Individual Plaintiffs") filed individual lawsuits against Defendant. (Motion at 8.) Each of the Individual Plaintiffs alleged that Defendant frequently suffered or permitted them to work more than forty (40) hours per week without paying them all of the overtime compensation required by the FLSA. (Id.; see also "Walter Declaration," Dkt. No. 218-3, Ex. 1(A)) (listing individual lawsuits.)

On July 12, 2023, Plaintiffs and Defendant jointly filed the Motion. (Motion.) In support of the Motion, the parties filed a Declaration of Megan Richmond ("Richmond Declaration," Dkt. No. 218-2), along with multiple exhibits reflecting the billing records and resumes of Plaintiffs' Counsel. (See id. Exs. A-G.) The parties also filed a Declaration of Brian P. Walter ("Walter Declaration," Dkt. No. 218-3), along with the following exhibits:

- Proposed Settlement Agreement and Release, signed by all Plaintiffs and Defendant ("Settlement Agreement," Ex. 1);
- A list of the FLSA lawsuits filed by Individual Plaintiffs ("List of Individual Lawsuits," Ex. 1(A);
- A spreadsheet showing the total payment amount allocated to each Plaintiff ("Compensation Spreadsheet," Dkt. Ex. 1(B)); and
- The individual signature pages to the Settlement Agreement for every Plaintiff ("Signature Pages," Ex. 1(C)).

On July 12, 2023, the Court advanced the hearing on the Motion to August 7, 2023 and vacated the final pretrial conference set for July 24, 2023 and the jury trial set for August 8, 2023. (Dkt. No. 219.)

---

[1] The motions in limine are DENIED AS MOOT.

## II.  LEGAL STANDARD

The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours."  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981).  The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by a contract.  Beidleman v. City of Modesto, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018) (citing Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013)).  Thus, employee claims under the FLSA cannot be waived for fear that employers may coerce employees into settlement and waiver.  Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  FLSA claims may only be waived or settled if settlement is supervised by the Secretary of the U.S. Department of Labor or approved by a federal district court.  Id.

"The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved."  Beidleman, 2018 WL 1305713 at *2.  District courts in this circuit have instead relied on the standard adopted by the Eleventh Circuit, which considers whether a "settlement represents a 'fair and reasonable resolution of a bona fide dispute.'"  Selk, 159 F. Supp. 3d at 1172 (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)).  "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'"  Id. (quoting Ambrosino v. Home Depot U.S.A., Inc., 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)); see also Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (listing, for example, issues regarding "FLSA coverage or computation of back wages").  "A court will not approve a settlement … [if] there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute."  Beidleman, 2018 WL 1305713, at *2.

Once a court finds that a bona fide dispute exists, it will often assess the FLSA settlement under the same factors used to evaluate a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), while recognizing that some of these factors do not apply because of the inherent differences between class actions and FLSA collective actions.  Seguin v. County of Tulare, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018); Khanna v. Inter-Con Sec. Sys., Inc., 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).  Application of the Rule 23 factors alone "runs the risk of not giving due weight to the policy [of protecting labor rights] behind the FLSA" that is not inherent to Rule 23.  Selk, 159 F. Supp. 3d at 1173.  Accordingly, courts apply "a totality of circumstances approach" to FLSA settlements.  Id.  Courts consider: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.  Id.  If, under these factors, "the settlement reflects a reasonable compromise over issues that are actually in dispute," then "the court may approve the settlement."  Id.

### III.  DISCUSSION

The Court examines (1) whether a bona fide dispute exists between the parties; (2) whether the Settlement Agreement is fair and reasonable under the totality of the circumstances; and (3) whether the requested award of attorney's fees and costs is reasonable.

**A.  Bona Fide Disputes**

The Court finds that the parties have demonstrated bona fide disputes between Plaintiffs and the County.  The core of each Plaintiff's claim is that Defendant did not pay him or her for all the overtime hours he or she worked under the FLSA.  Each Plaintiff alleges that Defendant knew or should have known that Plaintiffs were not paid for all hours worked, including meal breaks, essentially because (1) Defendant gave them more work than could possibly be completed in 40 hours per week and (2) Defendant's overtime policy and procedures barred Plaintiffs from receiving compensation for most of the routine or "non-emergency" tasks that Plaintiffs were required to perform.  (See Motion at 13; Richmond Declaration.)  Defendant denies these claims and asserts that Plaintiffs were not required to work more than 40 hours per week without overtime compensation to complete their essential job functions.  Defendant believes it maintained a lawful overtime reduction plan that required preapproval except for certain emergency assignments and accurate timekeeping by Plaintiffs of all hours worked.  Defendant denies any knowledge that Plaintiffs worked overtime that they did not report on their timesheets and that it committed any "willful" violation of the FLSA.  (See id.; Walter Declaration.)  The parties also dispute whether Defendant is legally entitled to any offsets for overtime payments made to Plaintiffs against any additional liability under the FLSA pursuant to 29 U.S.C. § 207(e) and (h).  (See Motion at 13; Walter Declaration.)

Moreover, the parties dispute whether Plaintiffs are entitled to liquidated damages. (Motion at 13; Walter Declaration ¶ 5; Richmond Declaration ¶ 5.)  "Section 216(b) provides that an employer who violates the Act shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages.  These liquidated damages represent compensation, and not a penalty." Loc. 246 Util. Workers Union of Am. v. S. California Edison Co., 83 F.3d 292, 297 (9th Cir. 1996) (citing 29 U.S.C. § 216(b)).  However, liquidated damages are not "automatic," as 29 U.S.C. § 260 affords an employer a defense to liquidated damages. Id.  Under that defense, "the employer has the burden of establishing subjective and objective good faith in its violation of the FLSA.  If the employer fails to carry that burden, liquidated damages are mandatory." Id.  Plaintiffs claim that Defendant did not act in good faith, while the County claims it had reasonable grounds for believing its conduct complied with the FLSA.  (See Motion at 14; Walter Declaration ¶ 5; Richmond Declaration ¶ 5.)  Defendant's liability for liquidated damages is thus disputed; since Section 216(b) awards liquidated damages in an amount equal to the back pay recovered, if liquidated damages were denied, Plaintiffs' range of recovery would be reduced by 50 percent.  See 29 U.S.C. § 216(b).

The Court concludes that these competing views reflect bona fide disputes about the FLSA which were resolved by the Settlement Agreement.  See Beidleman, 2018 WL 1305713, at

*3 (finding in case about cash-in-lieu payments bona fide disputes about the calculation of overtime compensation and defendant's good faith).

**B. The Proposed Settlement Is Fair and Reasonable**

The Court next evaluates the six factors discussed above to determine whether the Settlement Agreement is fair and reasonable under the totality of the circumstances. Selk, 159 F. Supp. 3d at 1173. For the reasons below, the Court concludes that the Settlement Agreement is fair and reasonable.

**1. Plaintiffs' Range of Possible Recovery**

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." Selk, 159 F. Supp. 3d at 1174 (citations omitted). Under the FLSA, the maximum amount a plaintiff can recover is twice the total amount of unpaid wages for the three-year period prior to filing or opting into to a lawsuit, provided she establishes a finding of willfulness and is awarded liquidated damages. See 29 U.S.C. § 216(b).

According to the terms of the Settlement Agreement, Defendant will pay Plaintiffs and Plaintiffs' Counsel's trust account a total amount of $3,375,000.01, exclusive of attorney's fees and costs, which the parties believe approximates a likely recovery at trial. (Motion at 15; Walter Declaration ¶ 9; Richmond Declaration ¶ 10.) As noted below, individual recovery is not uniform, but rather accounts for the individual nature of Plaintiffs' disparate claims.

To determine Plaintiffs' damages, Plaintiffs' Counsel applied a damages analysis based on the number of unpaid FLSA overtime hours each Plaintiff claimed to have worked and his or her prospective liquidated damages amount. Plaintiffs' Counsel then apportioned the total payment amount to each Plaintiff according to the individualized factors discussed below. For each Plaintiff, half of the allocation accounts for back pay for unpaid wages, while the other half accounts for liquidated damages. Each Plaintiff's recovery under the Settlement Agreement represents approximately 45 percent of the recoverable overtime pay that each Plaintiff claimed in their written discovery responses, after a proportional reduction of approximately 26 percent for costs and attorney's fees. (See Motion at 15; Richmond Declaration ¶¶ 10-13.)

For the total payment amount, Defendant plans to issue payment that represents unpaid overtime to each Plaintiff; Defendant would issue one lump sum check for all of Plaintiffs' liquidated damages payable to Plaintiffs' Counsel's client trust account, whereafter Plaintiffs' Counsel will issue individual liquidated damages checks to each Plaintiff. (See Motion at 16; Walter Declaration ¶ 9; Richmond Declaration ¶ 10.) The parties assessed damages for the back pay calculation for the relevant statutory period, which differs for the Named Plaintiffs and Individual Plaintiffs: for the former, the relevant statutory period starts on July 2, 2016 (three years prior to the filing of the instant action) through their date of separation of employment; for the latter, the relevant statutory period begins three years prior to filing a consent to sue form

through their date of separation of employment or November 8, 2022, whichever date is earlier. (See id.) The parties believe that the allocations for all Plaintiffs fall within the range of a reasonable result that each would expect to obtain if they prevailed at trial. (Id.)

"Individual recovery is not uniform, but Plaintiffs adequately explain this difference." Anspach v. 68-444 Perez, Inc., 2022 WL 2162820, at *4 (C.D. Cal. Apr. 21, 2022) (Bernal, J.). The allocation of the total payment to Plaintiffs ranges from $265.89 to $190,192.22. (Motion at 16; Richmond Declaration ¶ 12; Ex. 1(B).) These differences account for the following factors for each Plaintiff: the length of the relevant statutory period, the length of employment, the rate of pay, and the alleged number of unpaid FLSA overtime hours. As the parties' documentation and interrogatory responses indicate, there were significant variations in the potential recovery for the Individual Plaintiffs, which explains the sizeable range of recovery in the Settlement Agreement. The parties have submitted adequate documentation detailing the total recovery of each Plaintiff, broken down by "total overtime," "gross consent," "net consent," "wage check amount," and "liquidated damages check." (See Ex. 1(B).)

While, as noted above, the parties dispute the applicability of offsets and credits, they did not apply offsets and credits under 29 U.S.C. § 207(h)(2), which provides greater damages awards for Plaintiffs than that which is potentially recoverable under the FLSA. (See Motion at 17; Walter Declaration ¶ 11; Richmond Declaration ¶ 11.)

Overall, the parties believe that the Settlement Agreement provides Plaintiffs with a significant recovery that is fair and equitable in light of the risks presented by further litigation. (Motion at 17; Walter Declaration ¶ 12; Richmond Declaration ¶ 14.) The Court agrees that the aggregate and individual recoveries for Plaintiffs is fair and reasonable in light of their likelihood of success at trial. See Hart v. RCI Hosp. Holdings, Inc., 2015 WL 5577713, at *11 (S.D.N.Y. 2015) ("The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weakness of plaintiffs' case.") (citation omitted). This factor weighs in favor of settlement approval.

### 2. Stage of Proceedings and Amount of Discovery Completed

The Court must also consider the stage of the proceedings and the amount of discovery completed to ensure the parties "have an adequate appreciation of the merits of the case before reaching a settlement." Selk, 159 F. Supp. 3d at 1177. Generally, "[a] settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution." Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014).

As noted above, the parties have engaged in extensive litigation, both through the instant action and the claims brought by Individuals Plaintiffs subsequent to the Court's decertification of the collective action. Most importantly, the parties have engaged in extensive formal discovery, including written discovery and depositions. Plaintiffs received the necessary records to form an adequate appreciation of the merits of their cases; Defendant produced thousands of

pages of documents related to Plaintiffs' hours worked and compensation, as well as policies and memoranda of understanding governing Plaintiffs' compensation. Plaintiffs retained an expert to calculate damages. The parties briefed multiple complex motions, engaged in two days of mediation, and prepared numerous pretrial documents in anticipation of trial. After the collective action was decertified and Individual Plaintiffs filed suit, the parties conducted extensive discovery related to the individual actions, while 22 of the Individual Plaintiffs were also deposed during the pendency of the instant action. (See Motion at 18; Richmond Declaration ¶¶ 6-8; Walter Declaration ¶¶ 6-7.)

The Court concludes that the parties have conducted sufficient discovery to understand their relative litigation positions. Accordingly, this factor weighs in favor of approval.

### 3. Seriousness of the Litigation Risks Faced by the Parties

"Courts favor settlement where 'there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'" Seguin, 2018 WL 1919823, at *4 (quoting Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015)). As noted above, the Settlement Agreement provides Plaintiffs with meaningful relief, while there are significant disputes that could be resolved against them if they proceeded to trial, jeopardizing the relief already secured for them. As the parties note, if Plaintiffs do not prevail on a handful of key issues, their recovery would be significantly less than they have secured through the Settlement Agreement and potentially eliminated altogether. (See Motion at 19-20.) Accordingly, this factor also weighs in favor of approval.

### 4. Scope of Any Release Provision in the Settlement Agreement

"A[n] FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." Slezak v. City of Palo Alto, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). Here, the Settlement Agreement only requires Plaintiffs to release claims "relating to the ACTIONS against the COUNTY under the FLSA in regard to overtime pay that may exist or have existed during the Relevant Statutory Period, including all claims made in the ACTIONS for unpaid overtime, liquidated damages, interest, and attorneys' fees and costs, and PLAINTIFFS hereby fully, finally, and completely release, waive, and discharge the COUNTY, and its officers, agents, employees, successors and assigns from any further claims under the FLSA for anything that has occurred during the applicable Relevant Statutory Period ('RELEASED CLAIMS')." (Settlement Agreement; Walter Declaration ¶ 13, Ex. 1, Richmond Declaration ¶ 15.) The release itself confirms that "The PARTIES understand that this release does not include claims relating to conduct or activity that does not arise from or is not attributable to PLAINTIFFS' FLSA overtime claims," which memorializes the parties' understanding that only the claims arising from or attributable to Plaintiffs' claims in these actions are being released. (Id.) Accordingly, the Court concludes that the release does not exceed the FLSA's scope, is narrowly tailored to the claims at issue, and that the parties have a shared understanding of the terms of their agreement. This factor weighs in favor of approval.

### 5. Experience and View of Counsel and the Opinion of Plaintiffs

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." Selk, 159 F. Supp. 3d at 1176. Here, Plaintiffs' Counsel has over sixty years of collective experience litigating FLSA claims and have settled multiple FLSA suits, obtaining court approval of those settlements. (Richmond Declaration ¶¶ 3, 18-22.) Defendants' Counsel has years of experience advising public agencies on FLSA matters and defending public entities in FLSA lawsuits. (Walter Declaration ¶ 3.) Both Plaintiffs' Counsel and Defendants' Counsel assert that the terms of the Settlement Agreement are fair and reasonable. (Richmond Declaration ¶ 13; Walter Declaration ¶ 3.) In light of the experience of the parties' counsel, the Court finds their opinions affirming the reasonableness of the Settlement Agreement to be reliable.

The Court has also considered the opinions of Plaintiffs themselves. Before executing releases to their claims, each Individual Plaintiff was given a full and fair opportunity to consult with Plaintiffs' Counsel regarding the terms of the Settlement Agreement. The Named Plaintiffs and 86 opt-in Individual Plaintiffs who have brought individual suits all voluntarily agreed to accept the terms of the Settlement Agreement and have executed individual documents affirming their approval of the Settlement Agreement and General Release. (Richmond Declaration ¶ 7; see also Signature Pages.) Given the unanimous agreement of Plaintiffs to settle their claims, the Court is further persuaded that the terms of the Settlement Agreement are fair and reasonable both in the aggregate and with respect to each Plaintiff.

Accordingly, the Court concludes that this factor weighs in favor of approval.

### 6. Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low … [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." Slezak, 2017 WL 2688224, at *5. As previously noted, the parties engaged in extended arms-length settlement negotiations and ultimately reached an agreement during mediation with an experienced mediator, a retired District Court Magistrate Judge. (Motion at 21-22; Richmond Declaration ¶¶ 6-7.) The fact that all Plaintiffs "voluntarily signed the agreement also signifies a lack of collusion," while "[n]o other 'subtle signs' of collusion exist, such as a disproportionate award of attorneys' fees or a non-monetary settlement for plaintiffs in the face of a large monetary award to counsel." Valentine v. Sacramento Metro. Fire Dist., 2019 WL 651654, at *6 (E.D. Cal. Feb. 15, 2019). Further, the Court has found that the methodology for calculating Plaintiffs' recovery is reasonable and proportionate. "[Th]ere is nothing in the record in any way suggesting that plaintiffs' counsel 'allowed the pursuit of their own self-interests ... to infect the negotiation.'" Quiroz v. City of Ceres, 2019 WL 1005071, at *6 (E.D. Cal. Mar. 1, 2019) (quoting In re Bluetooth Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011)). The Court does not find any basis to conclude that the parties have engaged in fraud or collusion. Accordingly, this factor weighs in favor of approval.

In sum, all six factors weigh in favor of approval of the Settlement Agreement. The Court concludes that, under the totality of the circumstances, the Settlement Agreement constitutes a fair and reasonable resolution of bona fide disputes over FLSA claims. The Court GRANTS the Motion and APPROVES the Settlement Agreement.

**C. Attorney's Fees and Costs**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." Selk, 159 F. Supp. 3d at 1180 (quoting Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)); see also 29 U.S.C. § 216(b) (finding that a court "shall . . . allow a reasonable attorney's fee to be paid by the defendant" when an employer violates certain FLSA provisions). "When a settlement produces a common fund for the benefit of the entire class, a court has the discretion to apply either the percentage-of-recovery method or the lodestar method to determine a reasonable attorney's fee." Dashiell v. County of Riverside, 2018 WL 3629915, at *5 (C.D. Cal. July 19, 2018) (citing Selk, 159 F. Supp. 3d at 1180). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015).

Here, the Settlement Agreement provides for $1,174,999.99 in attorney's fees and costs, while Plaintiffs will receive $3,375,000.01 in total compensation. (Richmond Declaration ¶ 24.) Thus, attorney's fees and costs amount to approximately 25.8% of the total settlement amount, $4,550,000.00. Because this award approximates the benchmark, the Court initially finds that the requested attorneys' fees and costs are reasonable. Cf. Quiroz, 2019 WL 1005071, at *6 ("The attorneys' fees and costs represent roughly twenty-seven percent of the settlement amount, which is slightly above the benchmark, but also below comparable awards in other similar cases.") (collecting cases). Further, the parties have stipulated to these fees and costs "in an effort to resolve the dispute expediently and with the Plaintiffs' best interests in mind"; Plaintiffs' Counsel aver that they have "spent considerably more time on this matter" than that reflected in the fee award requested here, and if "required to bring a fee motion, would be seeking fees well in excess of the agreed upon amount." (Richmond Declaration ¶ 24.) The Court finds the parties' stipulation to the fees and costs award further evidence of its reasonableness.

The Court may also apply "the lodestar method as a cross-check of the percentage method." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Id. "When a court uses the lodestar as a cross-check to a percentage claim of fees, it need only make a 'rough calculation.'" Valentine, 2019 WL 651654, at *7 (citation omitted). Plaintiffs' Counsel has provided detailed documentation of their experience, hourly rate, billable hours, and litigation costs. (See Motion at 24-25; Richmond Declaration ¶¶ 17-26.) Applying the total hours expended by Plaintiffs' Counsel and reducing it by $225,821.61 in advanced litigation costs, the $1,174,999.99 total award of attorney's fees and costs would represent a blended hourly rate of approximately $213, which is below the regularly approved hourly rates in the federal district courts in California for

comparable FLSA cases.  See, e.g., Quiroz, 2019 WL 1005071, at *7 (observing that the court had "previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners" in FLSA cases and discussing cases that have approved similar or somewhat lower rates); Contreras v. Armstrong Flooring, Inc., 2021 WL 4352299, at *11 (C.D. Cal. July 6, 2021) (relying upon the 2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices ('Real Rate Report') "as a useful guidepost to assess the reasonableness of these hourly rates in the Central District," observing that "[t]he 2020 Real Rate Report provides that, in Los Angeles, partners litigating employment and labor matters have hourly rates ranging from $470 to $753," and approving an hourly rate of "$625 as within the range charged in the relevant community"). Plaintiffs have also accounted for their requested costs, item-by-item.  (See Ex. G.)

Accordingly, the Court concludes that the requested award of $1,174,999.99 in attorney's fees and costs is reasonable.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion.  The Court:

1. **APPROVES** the Joint Motion for Approval of FLSA Settlement and Dismissal of Case With Prejudice;

2. **FINDS** that the Settlement Agreement submitted to the Court as Exhibit 1 to the Declaration of Brian Walter, which is incorporated herein by reference, is approved as fair, reasonable and just in all respects as to the Plaintiffs, including the award of attorneys' fees and costs;

3. **ORDERS** Plaintiffs and Defendant (collectively, "Parties") to fully abide by and perform the Settlement Agreement in its entirety and in accordance with its terms;

4. **DECLARES** that the Court has made no findings or determinations regarding the law, and none of the materials or documents prepared or submitted in support of the Joint Motion for Approval of FLSA Settlement and Dismissal of Case With Prejudice shall constitute evidence of, or any admission of, any violation of law;

5. **RESERVES** jurisdiction over the above-captioned matter for the purposes of enforcing the terms of the Settlement Agreement only;

6. **DISMISSES WITH PREJUDICE** this action (Karrene Phillips et al. v. County of Riverside et al., Case No. EDCV 19-01231-JGB-SHK) and the individual actions filed by the Individual Plaintiffs listed and identified in Exhibit 1(A) to the Declaration of Brian Walter and attached to this Order;

7. **VACATES** the hearing set for August 7, 2023; and

8. **DIRECTS** the Clerk of the Court to close the cases.

**IT IS SO ORDERED.**

EXHIBIT A
LIST OF INDIVIDUAL LAWSUITS

| PLAINTIFF LAST NAME | PLAINTIFF FIRST NAME | CASE NAME | DOCKET NO. |
|---|---|---|---|
| Anderson | Amy | *Anderson v. County of Riverside* | 5:22-cv-01051-JGB-SHK |
| Angeletta-Mayes | Lakesha | *Angeletta-Mayes v. County of Riverside* | 5:22-cv-01054-JGB-SHK |
| Arredondo | Alina | *Arredondo v. County of Riverside* | 5:22-cv-01050-JGB-SHK |
| Arviso | Christina | *Arviso v. County of Riverside* | 5:22-cv-04391-JGB-SHK |
| Ausillo | Diane | *Ausillo v. County of Riverside* | 5:22-cv-01053-JGB-SHK |
| Beck | Sarah | *Beck v. County of Riverside* | 5:22-cv-01055-JGB-SHK |
| Biddle | Deborah | *Biddle v. County of Riverside* | 5:22-cv-01065-JGB-SHK |
| Boyd | Meghan | *Boyd v. County of Riverside* | 5:22-cv-01067-JGB-SHK |
| Brezniak | Kimberly | *Brezniak v. County of Riverside* | 5:22-cv-01068-JGB-SHK |
| Brock | Kimbely-Renee | *Brock v. County of Riverside* | 5:22-cv-01069-JGB-SHK |
| Brown | Shontay | *Brown v. County of Riverside* | 5:22-cv-01070-JGB-SHK |
| Bundy | Shane | *Bundy v. County of Riverside* | 5:22-cv-01072-JGB-SHK |
| Burrola-Roon | Gabriela | *Burrola-Roon v. County of Riverside* | 5:22-cv-01073-JGB-SHK |
| Caldwell | Karina | *Caldwell v. County of Riverside* | 5:22-cv-01074-JGB-SHK |
| Chappell | Sarah | *Chappell v. County of Riverside* | 5:22-cv-01075-JGB-SHK |
| Chavez-Rodriguez | Monica | *Chavez-Rodriguez v. County of Riverside* | 5:22-cv-01076-JGB-SHK |
| Chinwah | Nkemakolam | *Chinwah v. County of Riverside* | 5:22-cv-01083-JGB-SHK |
| Chock | Justina | *Chock v. County of Riverside* | 5:22-cv-01084-JGB-SHK |
| Dennis Crippen | LaShanne | *Dennis Crippen v. County of Riverside* | 5:22-cv-01086-JGB-SHK |
| Dillon | Brian | *Dillon v. County of Riverside* | 5:22-cv-01087-JGB-SHK |
| Dixon | Tomika | *Dixon v. County of Riverside* | 5:22-cv-01106-JGB-SHK |
| Dumas | Phillis | *Dumas v. County of Riverside* | 5:22-cv-01107-JGB-SHK |
| Dunlap | Nichole | *Dunlap v. County of Riverside* | 5-22-cv-01108-JGB-SHK |
| Ferguson | Heidi | *Ferguson v. County of Riverside* | 5:22-cv-01109-JGB-SHK |
| Fountain | Johnnie | *Fountain v. County of Riverside* | 5:22-cv-01196-JGB-SHK |
| French | Tanisha | *French v. County of Riverside* | 5:22-cv-01193-JGB-SHK |
| Frierson | Tonda | *Frierson v. County of Riverside* | 5:22-cv-01110-JGB-SHK |
| Funston | Stephanie | *Funston v. County of Riverside* | 5:22-cv-01111-JGB-SHK |
| Galindo | Felicia | *Galindo v. County of Riverside* | 5:22-cv-01113-JGB-SHK |
| Gandara | Amber | *Gandara v. County of Riverside* | 5:22-cv-01115-JGB-SHK |
| Gil | Blondie | *Gil v. County of Riverside* | 5:22-cv-01116-JGB-SHK |
| Goff | Coleman | *Goff v. County of Riverside* | 5:22-cv-01117-JGB-SHK |
| Gonzalez | Lourdes | *Gonzalez v. County of Riverside* | 5:22-cv-01118-JGB-SHK |
| Gonzalez-Vazquez | Gabriela | *Gonzalez-Vazquez v. County of Riverside* | 5:22-cv-01119-JGB-SHK |
| Harris | Raaya | *Harris v. County of Riverside* | 5:22-cv-01120-JGB-SHK |
| Hejduk | Chandra | *Hejduk v. County of Riverside* | 5:22-cv-01121-JGB-SHK |
| Huser | Michael | *Huser v. County of Riverside* | 5:22-cv-01131-JGB-SHK |
| Ibemere | Catherine | *Ibemere v. County of Riverside* | 5:22-cv-01134-JGB-SHK |
| Johnson | Jennie | *Johnson v. County of Riverside* | 5:22-cv-01135-JGB-SHK |
| Jorgensen | Kathy | *Jorgensen v. County of Riverside* | 5:22-cv-01136-JGB-SHK |
| Keaton | Carole | *Keaton v. County of Riverside* | 5:22-cv-01138-JGB-SHK |
| Koin-Murray | Ebikoboere | *Koin-Murray v. County of Riverside* | 5:22-cv-01197-JGB-SHK |
| Lacy | Quiana | *Lacy v. County of Riverside* | 5:22-cv-01140-JGB-SHK |
| Lee | Elisa | *Lee v. County of Riverside* | 5:22-cv-01142-JGB-SHK |
| Leeb | Debra | *Leeb v. County of Riverside* | 5:22-cv-01145-JGB-SHK |

EXHIBIT A
LIST OF INDIVIDUAL LAWSUITS

| PLAINTIFF LAST NAME | PLAINTIFF FIRST NAME | CASE NAME | DOCKET NO. |
|---|---|---|---|
| Leyva | Hilda | *Leyva v. County of Riverside* | 5:22-cv-01146-JGB-SHK |
| Lillard | Kathleen | *Lillard v. County of Riverside* | 5:22-cv-01147-JGB-SHK |
| Maday | Susan | *Maday v. County of Riverside* | 5:22-cv-01197-JGB-SHK |
| Maranville | Karen | *Maranville v. County of Riverside* | 5:22-cv-01148-JGB-SHK |
| Martinez-Garcia | Stephanie | *Martinez-Garcia v. County of Riverside* | 5:22-cv-01149-JGB-SHK |
| Melendez | Jaime | *Melendez v. County of Riverside* | 5:22-cv-01203-JGB-SHK |
| Mena | Rosa | *Mena v. County of Riverside* | 5:22-cv-01150-JGB-SHK |
| Mendez | Leonor | *Mendez v. County of Riverside* | 5:22-cv-01190-JGB-SHK |
| Meza | Dakota | *Meza v. County of Riverside* | 5:22-cv-01201-JGB-SHK |
| Monet-Ramirez | Chloe | *Monet-Ramirez v. County of Riverside* | 5:22-cv-01155-JGB-SHK |
| Mora | Anthony | *Mora v. County of Riverside* | 5:22-cv-01204-JGB-SHK |
| Musquiz | Richard | *Musquiz v. County of Riverside* | 5:22-cv-01156-JGB-SHK |
| Nabi-Solomon | Deanna | *Nabi-Solomon v. County of Riverside* | 5:22-cv-01158-JGB-SHK |
| O'Shea | Deborah | *O'Shea v. County of Riverside* | 5:22-cv-01159-JGB-SHK |
| Penn | Syreeta | *Penn v. County of Riverside* | 5:22-cv-01191-JGB-SHK |
| Perez | Maria | *Perez v. County of Riverside* | 5:22-cv-01160-JGB-SHK |
| Perez, Jr. | Ronald | *Perez, Jr. v. County of Riverside* | 5:22-cv-01161-JGB-SHK |
| Raiford | Eddie | *Raiford v. County of Riverside* | 5:22-cv-01163-JGB-SHK |
| Ramirez-Neally | Eliza | *Ramirez-Neally v. County of Riverside* | 5:22-cv-01164-JGB-SHK |
| Revilla | Natasha | *Revilla v. County of Riverside* | 5:22-cv-01165-JGB-SHK |
| Reyes | Robert | *Reyes v. County of Riverside* | 5:22-cv-01206-JGB-SHK |
| Roberson | John | *Roberson v. County of Riverside* | 5:22-cv-01166-JGB-SHK |
| Saito | Kai | *Saito v. County of Riverside* | 5:22-cv-01167-JGB-SHK |
| Santisteban | James | *Santisteban v. County of Riverside* | 5:22-cv-01168-JGB-SHK |
| Seolim | Rebecca | *Seolim v. County of Riverside* | 5:22-cv-01169-JGB-SHK |
| Shepard | Sydney | *Shepard v. County of Riverside* | 5:22-cv-01171-JGB-SHK |
| Swan | Jamerlyn | *Swan v. County of Riverside* | 5:22-cv-01172-JGB-SHK |
| Taite | Sheila | *Taite v. County of Riverside* | 5:22-cv-01173-JGB-SHK |
| Taylor | Rhonda | *Taylor v. County of Riverside* | 5:22-cv-01174-JGB-SHK |
| Thomas | Esther | *Thomas v. County of Riverside* | 5:22-cv-01175-JGB-SHK |
| Thomas-Johnson | Janet | *Thomas-Johnson v. County of Riverside* | 5:22-cv-01176-JGB-SHK |
| Thong | Alisha | *Thong v. County of Riverside* | 5:22-cv-01178-JGB-SHK |
| Torres | Angel | *Torres v. County of Riverside* | 5:22-cv-01179-JGB-SHK |
| Ukiru | Judi | *Ukiru v. County of Riverside* | 5:22-cv-01181-JGB-SHK |
| Urena | Mayra | *Urena v. County of Riverside* | 5:22-cv-01182-JGB-SHK |
| Vorachack | Karla | *Vorachack v. County of Riverside* | 5:22-cv-01183-JGB-SHK |
| Waller | Lidia | *Waller v. County of Riverside* | 5:22-cv-01186-JGB-SHK |
| Whitaker | Valerie | *Whitaker v. County of Riverside* | 5:22-cv-01187-JGB-SHK |
| Whitehall | Maryann | *Whitehall v. County of Riverside* | 5:22-cv-01208-JGB-SHK |
| Zanders | Zsanette | *Zanders v. County of Riverside* | 5:22-cv-01188-JGB-SHK |
| Zaragoza-Barriga | Marisol | *Zaragoza-Barriga v. County of Riverside* | 5:22-cv-01189-JGB-SHK |